## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Volkswagen Group of America, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| Illinois Secretary of State Jesse White, in his official capacity; and | ) Case No. |
| | ) |
| Illinois Attorney General Kwame Raoul, in his official capacity; and | ) Complaint |
| | ) |
| The Members of the Illinois Motor Vehicle Review Board: | ) |
| Bruce Adelman, in his official capacity; Mary Awerkamp, in her official capacity; Roger McGinty, in his official capacity; Terrence O'Brien, in his official capacity; Frank Olivo, in his official capacity; Lyle Richmond, in his official capacity; and Daniel Stephens, in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## NATURE OF THE ACTION

1.     This lawsuit challenges the constitutionality of an amendment to the Illinois Motor Vehicle Franchise Act ("MVFA").

2.     The MVFA, first passed into law in 1979, grants extraordinary commercial benefits and legal protections to Illinois new motor vehicle dealers in their relationships with motor vehicle manufacturers. It is a relic of a bygone era when the "Big Three" U.S. automakers dominated the new vehicle market and reputedly used a heavy hand with dealership networks composed of small family-owned businesses.

3.      Today, the new motor vehicle market looks very different. Competition among manufacturers is widespread and dynamic, fueled by generational changes in consumer preferences, transformative innovations in electric vehicle technology, and the rise of new entrants (such as Tesla) that are not subject to the statutory restraints that confine legacy manufacturers. At the same time, dealers today have far more economic power and sophistication than their predecessors, as large public corporations, private equity, and billion-dollar family enterprises have come to dominate a consolidated retail market.

4.      The MVFA nonetheless persists, providing Illinois dealers—some of the State's most remunerative businesses—with greater statutory benefits and protections than virtually any other interest group in any industry, while imposing an array of unusual constraints on manufacturers. For example, the MVFA prohibits most manufacturers from owning or operating dealerships or otherwise selling motor vehicles directly to consumers; restricts manufacturers' ability to add, relocate, and terminate dealers; and limits manufacturers' right to choose the dealers with whom they do business.

5.      The MVFA regulates more discrete areas of the business as well, such as the administration of manufacturer warranties. When consumers seek repairs on vehicles and parts covered by a manufacturer warranty, they are free to go to any dealer for the relevant manufacturer. Manufacturers then pay their dealers for the warranty repair work they perform. The MVFA does not allow manufacturers to limit or restrict which dealers provide warranty service.

6.     The MVFA also regulates how manufacturers pay their dealers for warranty work. For decades, the MVFA required manufacturers to pay reasonable, market-based compensation to dealers. But a recent amendment to the MVFA radically and irrationally upends this status quo, removing the "reasonableness" standard and compelling manufacturers to pay hundreds of millions of additional dollars to Illinois dealers for no legitimate reason.

7.     The amendment, enacted in 2021 by Illinois HB 3940 and effective as of January 1, 2022 (the "Multiplier Act"), requires motor vehicle manufacturers to compensate dealers for time that the dealers never actually spend performing warranty work. It replaces the MVFA's market-based guidelines for warranty compensation with an arbitrary and confiscatory rule: manufacturers must pay dealers for *50 percent more time* than necessary to complete warranty repairs, whether or not they actually work any of that additional time.

8.     Proponents of the Multiplier Act claim that its main purpose is to ensure that motor vehicle dealers pay adequate compensation to the service technicians they employ. But the law is not rationally related to that end or to any other legitimate legislative purpose.

9.     The Multiplier Act does not require dealers to increase technician pay one cent. Nor does it address or account either for technicians employed by manufacturers that sell directly to consumers, such as Tesla, Rivian, and Lucid, or for technicians employed by franchise repair shops, such as AAMCO or Midas, which offer their own warranties.

10.     Meanwhile, Illinois dealers already enjoyed significant profit margins on warranty work *before* the Multiplier Act. They were thus capable of raising employee wages if the labor market warranted it, and to do so without sacrificing profitability. In other words, if dealers were undercompensating their service technicians, that was not because manufacturers were undercompensating their dealers.

11.     Simply put, the Multiplier Act is crony capitalism at work: redistributive legislation that takes hundreds of millions of dollars from some (but not all) motor vehicle manufacturers and, *for no public purpose*, deposits that money directly into the pockets of politically favored Illinois dealers. The Multiplier Act is unconstitutional under the Commerce Clause of the United States Constitution; the Special Legislation Clause of the Illinois Constitution; and the Takings, Due Process, and Equal Protection Clauses of both constitutions.

12.     And the Multiplier Act's constitutional offenses do not end there. Another provision of the law restricts manufacturers from recovering the increased costs the legislation imposes on them. The statute provides that "[m]anufacturers are not permitted to impose *any form* of cost recovery *fees or surcharges* against a franchised auto dealership for payments made in accordance with this Section" (the "Recoupment Bar").  815 ILCS 710/6(b) (emphasis added).

13.     One reading of the Recoupment Bar prohibits manufacturers from raising the price of vehicles sold in Illinois to recoup the new costs that the legislation imposes, thereby externalizing those costs to other states and unlawfully

discriminating against, or at least unduly burdening, interstate commerce. Under this interpretation, the law is unconstitutional because it violates the Commerce Clause of the United States Constitution.

14. Even under a narrower reading of the Recoupment Bar that allows manufacturers to recoup the law's costs by raising the price of vehicles sold in Illinois, manufacturers cannot do so through "fees" or "surcharges" attributing those price increases *to* the legislation. The statute thus restricts manufacturers' commercial speech and harms consumers, to whom the dealers would pass along the cost, by limiting consumers' access to information about pricing. Under this narrower interpretation, the law is unconstitutional because it violates the Free Speech Clauses of both the United States Constitution and the Illinois Constitution.

15. This lawsuit therefore seeks a declaration that the Multiplier Act is unconstitutional under the United States and Illinois Constitutions, as well as injunctive relief barring its enforcement.

## THE PARTIES

### I. Plaintiff

16. Plaintiff Volkswagen Group of America, Inc. ("VWGoA") is a New Jersey corporation with its principal place of business located in Herndon, Virginia. VWGoA distributes Volkswagen and Audi new motor vehicles, parts, and accessories throughout the United States.

17. VWGoA distributes Volkswagen-brand new motor vehicles, parts, and accessories in Illinois through authorized Illinois Volkswagen dealers ("Illinois Volkswagen Dealers").

18.     VWGoA distributes Audi-brand new motor vehicles, parts, and accessories through authorized Illinois Audi dealers ("Illinois Audi Dealers"). The Illinois Volkswagen Dealers and Illinois Audi Dealers are described collectively as the "Illinois Dealers."

## II.     Defendants

19.     The Defendants are all officials of the State of Illinois and are named as defendants in their official capacities.

20.     Jesse White is named a defendant in his official capacity as the Secretary of State for the State of Illinois. The Secretary of State is responsible for administering the Illinois Motor Vehicle Review Board (the "Board") and the MVFA (*see* 815 ILCS 710/19, 710/22), as well as appointing members of the Board (*see* 815 ILCS 710/16), subordinate officers, and other employees to carry out the provisions of the MVFA (*see* 815 ILCS 710/21).

21.     Kwame Raoul is named a defendant in his official capacity as the Attorney General for the State of Illinois. The Attorney General is responsible for enforcing statutory law in Illinois, including the MVFA and the Multiplier Act.

22.     The following individuals (collectively, the "Board Defendants") are named defendants in their official capacities as members of the Board, which, through the Board Defendants and those subject to their supervision and direction, is also responsible for the enforcement of the MVFA. The Board decides certain administrative disputes between motor vehicle franchisors and franchisees relating to the MVFA, and is statutorily empowered to advise the Illinois Secretary of State

regarding legislation proposed to amend the MVFA as well as Board appointments (815 ILCS 710/18):

    a. Terrence O'Brien, in his official capacity as a member of the Board and, on information and belief, the chairperson thereof;

    b. Bruce Adelman, in his official capacity as a member of the Board;

    c. Mary Awerkamp, in her official capacity as a member of the Board;

    d. Roger McGinty, in his official capacity as a member of the Board;

    e. Frank Olivo, in his official capacity as a member of the Board;

    f. Lyle Richmond, in his official capacity as a member of the Board; and

    g. Daniel Stephens, in his official capacity as a member of the Board.

## JURISDICTION AND VENUE

23. This action arises under Article I, §§ 8 and 10, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, as well as Article I §§ 2, 15, and 16 of the Illinois Constitution. Plaintiff seeks declaratory and injunctive relief against the enforcement of the Multiplier Act, the enactment and enforcement of which: (i) violate VWGoA's rights to freedom of speech, to due process, to equal protection, and against taking of property for no public purpose and without just compensation; and (ii) also discriminate against interstate commerce.

24. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 over the federal question claims in Counts I, III, IV, VII, and IX.

25.     This Court may also exercise supplemental jurisdiction over Counts II, V, VI, VIII, and X, pursuant to 28 U.S.C. § 1367(a), because all state-created claims pleaded took place within the State of Illinois, and otherwise arise out of a common nucleus of operative facts with the federal question claims.

26.     This Court is authorized to grant VWGoA's prayer for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

27.     This Court is authorized to grant VWGoA's prayers for injunctive relief under 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure.

28.     This Court is authorized to award VWGoA's attorneys' fees and costs against the Defendants under 42 U.S.C. § 1988.

29.     Each of the Defendants is subject to the general personal jurisdiction of this Court because each is an Illinois government official.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because at least some defendants are located in this district and all defendants are located in the State of Illinois.

## FACTUAL BACKGROUND

### I.     The Illinois Motor Vehicle Franchise Act

31.     The MVFA, codified at 815 ILCS §§ 710/1 *et seq.*, prohibits manufacturers and distributors of new motor vehicles from owning or operating a dealership in Illinois. *See* 815 ILCS § 710/4(f).[1]

---

[1] This Complaint refers to "manufacturers" and "distributors" in various places, but for purposes of the claims asserted herein the distinction does not matter. The applicable statutory definition of "manufacturer" includes "distributors" as well. *See* 815 ILCS § 710/2(b). In the interest of clarity, VWGoA is a distributor – it does not manufacture vehicles. Rather, it acquires Volkswagen and Audi

32.     As a result, Illinois consumers purchase most brands of new passenger cars and light-duty trucks from authorized, independently owned dealers that acquire the vehicles wholesale from manufacturers or distributors.

33.     Illinois prohibits the sale of new motor vehicles without a license. A dealer cannot obtain a license to sell a particular brand or "line-make" of new vehicles (*e.g.,* Chevrolet, Ford, Jeep, Volkswagen, Toyota, etc.) unless it has a written agreement with the manufacturer or distributor of that line-make. 625 ILCS §§ 5/5-101(a), (b)(4).[2] These business arrangements between manufacturer and dealer are commonly referred to as "franchises." There are approximately 700 such "franchise" dealerships in Illinois, including 28 Volkswagen and 12 Audi dealerships.

34.     In addition to selling vehicles, these franchise dealers also perform vehicle service, such as maintenance and repairs. A significant proportion of this service is warranty work—*i.e.*, service performed on vehicle parts covered by a manufacturer warranty.

35.     A dealer may sell new Volkswagen vehicles and perform warranty service on Volkswagens only if it has a Volkswagen dealer agreement with VWGoA. Likewise, a dealer may sell new Audi vehicles and perform warranty service on Audis only if it has an Audi dealer agreement with VWGoA.

---

vehicles from its German parent company, Volkswagen AG, and distributes those vehicles in the United States, including by wholesaling them to authorized dealers in Illinois. Other automotive companies, such as, on information and belief, General Motors LLC, both manufacture and distribute vehicles to dealers in Illinois.

[2] These requirements appear in the Illinois Vehicle Code, 625 ILCS §§ 5/1-100 *et seq*., which also regulates certain aspects of motor vehicle commerce, among other matters.

36. There is one notable statutory exception to the independent-dealer model described above. Several new all-electric vehicle ("EV") manufacturers, including Tesla, Rivian, and Lucid, sell vehicles directly to consumers and perform warranty service themselves. On information and belief, Tesla currently operates at least seven service centers in Illinois; Rivian operates two; and Lucid operates one. Each of them employs technicians to perform warranty service for its customers.

37. VWGoA and other legacy car companies also distribute EVs in Illinois, but are not permitted to sell vehicles directly to the public. They must honor the warranties on those vehicles by allowing the franchise dealers to perform warranty service, and must compensate the dealers for warranty service as provided by the MVFA.

## II. Warranty Service on Volkswagen and Audi Motor Vehicles

38. New and Certified Pre-Owned ("CPO") Volkswagen and Audi motor vehicles are covered by manufacturer limited warranties.

39. VWGoA provides a bumper-to-bumper limited warranty on all new Volkswagen and Audi vehicles of four years/50,000 miles, covering nearly every mechanical and electrical component of each vehicle.

40. VWGoA provides additional warranty protection on CPO vehicles. For Volkswagen CPO vehicles, VWGoA provides model-specific limited warranties ranging from one year/12,000 miles to two years/24,000 miles. For all Audi CPO vehicles, VWGoA provides a limited warranty of two years/50,000 miles.

41. Under these warranties, VWGoA is obligated to provide covered repair and maintenance services free-of-charge to vehicle owners. Moreover, the MVFA

specifically requires manufacturers and distributors, including VWGoA, to "properly fulfill any warranty agreement." 815 ILCS § 710/6(a). Therefore, even if the cost of providing warranty service in Illinois were to become uneconomical for VWGoA, it does not have the option of exiting the warranty service marketplace.

42.     In addition, the MVFA requires VWGoA to fulfill its warranties by allowing Volkswagen and Audi owners to take their vehicles for service to any Volkswagen and Audi dealer, respectively, and paying each dealer for the warranty work it performs.

43.     For nearly 40 years before passage of the Multiplier Act, the MVFA required manufacturers to pay dealers for warranty service according to a market-based reasonableness standard. It did not prescribe either a specific amount of time that manufacturers must allow to complete a warranty service repair (*i.e.*, a "time allowance") or an hourly rate for such service.  Rather, it required each manufacturer to "adequately and fairly compensate" its dealers for warranty service, which included "reasonable and adequate" "[t]ime allowances for the diagnosis and performance of warranty work."  *See* 815 ILCS § 710/6(a) & (b) (2021).

44.     Thus, for nearly four decades, Illinois law provided a stable market-based rule for warranty service compensation from which manufacturers, distributors, and dealers could all set their expectations. While other parts of the MVFA were amended many times during those four decades (s*ee* Ill. P.A. 83-922, § 1, eff. Nov. 3, 1983; Ill. P.A. 87-1163, § 1, eff. Jan. 1, 1993; Ill. P.A. 91-485, § 5, eff. Jan. 1, 2000; Ill. P.A. 92-498, § 5, eff. Dec. 12, 2001; Ill. P.A. 92-651, § 96, eff. July 11, 2002;

Ill. P.A. 94-882, § 5, eff. June 20, 2006; Ill. P.A. 96-11, § 5, eff. May 22, 2009), this rule remained intact.

45.     Consistent with the MVFA, VWGoA, like most motor vehicle manufacturers, has compensated the Illinois Dealers for warranty service based on the amount of time needed to complete the repairs.

46.     Typically, VWGoA determines the amount of time needed for warranty service according to a designated time allowance for each type of repair operation. These designated time allowances are referred to as "flat rate" times ("Warranty Flat Rate Time"). There is a Warranty Flat Rate Time for each individual repair operation on each Volkswagen and Audi model vehicle.

47.     Warranty Flat Rate Time for each individual repair operation is set by VWGoA's parent company, Volkswagen AG ("VW AG"), which is among the world's largest automakers. VW AG applies Warranty Flat Rate Time uniformly to all warranty service on Volkswagen and Audi vehicles.

48.     To determine Warranty Flat Rate Time for each individual repair operation, VW AG retains an independent, expert testing company to evaluate, test, and determine the "basic time" required for each repair operation using a "working hours analysis." VW AG then adds "process time," "equipping time," and "distribution time" to the basic time to arrive at a total time for each repair operation. Warranty Flat Rate Time for each repair operation thus includes the time needed for set-up, standard diagnosis, and repair procedures.

49.     In addition, VWGoA adjusts warranty labor reimbursement claims for "exceptional conditions," including, for example, "additional repair steps," a "missing labor operation," or "diagnosis time." For such exceptional conditions, dealers may use the actual "punched time" or "A-time," which is the total clocked time a technician works on a repair.

50.     As a result, Illinois Dealers generally receive at least full compensation from VWGoA when performing warranty service on Volkswagen and Audi vehicles. If a technician's *actual* labor time is *less than* the Warranty Flat Rate Time, VWGoA nonetheless pays the Illinois Dealers its applicable labor rate for the Warranty Flat Rate Time. If, on the other hand, the technician's *actual* labor time *exceeds* the Warranty Flat Rate Time for a legitimate reason, or if no Warranty Flat Rate Time exists for a particular repair operation, the dealer may request payment at the applicable labor rate for the actual time spent.

51.     In addition, Volkswagen and Audi dealers may challenge the Warranty Flat Rate Time for any specific labor operation they believe to be incorrect, using the software platform provided to them.

52.     Despite the existence of such an easy method for challenging Warranty Flat Rate Time, challenges are exceedingly rare. On average, VWGoA has received only a few such challenges each year despite tens of thousands of warranty service repair orders completed annually by the Illinois Dealers.

53.     On information and belief, no Illinois Volkswagen or Audi Dealer has ever filed an action either with the Board or a court contending that the time

allowances that VWGoA uses to compensate dealers for warranty repairs are either unreasonable or inadequate.

54. The MVFA authorizes Illinois dealers and the Secretary of State (through the Attorney General) to challenge manufacturer time allowances for warranty work they believe to be unreasonable or inadequate, and to seek injunctive relief against the manufacturer and an award of fees and costs. It even gives dealers the right to treble damages in certain circumstances. *See* 815 ILCS §§ 710/12(b), 710/13, and 710/28.

55. Warranty service comprises a significant portion of the Illinois Dealers' total service operations and service business gross profits, which in turn comprises a significant portion of the dealerships' overall gross profits.

56. For example, in 2021, the average Illinois Dealer completed thousands of warranty service repair orders, and derived approximately 40 percent of its total repair orders and service-business gross profits from warranty service.

57. The Illinois Dealers profited greatly from their warranty service business. In fact, the average Illinois Dealer has earned higher gross profit margins on warranty service than on retail (*i.e.*, customer-pay) service.

## III. Retail, or Customer-Pay, Service on Volkswagen and Audi Vehicles

58. Unlike warranty service, vehicle owners themselves typically must pay for repairs that are not covered by manufacturer warranty, or that are needed after the warranty has expired. Such work is often referred to as "retail" or "customer-pay" service.

59.     Vehicle owners may obtain retail service at authorized dealerships or at thousands of other "after-market" repair shops in Illinois that are unaffiliated with motor vehicle manufacturers. Some of these after-market repair shops are themselves franchises. AAMCO, Christian Brothers, Firestone, Jiffy Lube, Meineke, and Midas are prominent examples. Others are associated with franchise or company-owned gas stations, such as Shell or BP. And still others are stand-alone businesses both large and small. Like dealerships, all such after-market repair shops employ vehicle technicians.

60.     AAMCO, Christian Brothers, Firestone, Jiffy Lube, Meineke, and Midas, among other franchise after-market repair shops, offer limited warranties on retail service they perform and parts they install. On information and belief, AAMCO, Firestone, Jiffy Lube, and Meineke offer limited warranties of at least 12 months/12,000 miles, Christian Brothers offers a limited warranty of at least 3 years/36,000 miles, and Midas offers a limited lifetime warranty.

61.     Illinois Volkswagen Dealers perform retail service primarily for Volkswagen vehicle owners. Illinois Audi Dealers perform retail service primarily for Audi vehicle owners. After-market repair shops, however, typically perform retail service on many different brands of passenger vehicles.

62.     Many dealerships and after-market repair shops advertise an hourly rate (in dollars) for service, but do not charge retail customers for the actual time they spend working on the vehicle. Instead, they charge "flat rate" or "book" time for each retail service repair, regardless of the actual time it takes them to complete a repair

("Retail Book Time"). Retail Book Time often exceeds the actual time a dealer took to service the vehicle.

63.     On information and belief, some Illinois Dealers determine their Retail Book Time by simply "marking up" VWGoA's Warranty Flat Rate Time by a factor of 1.5 or more.

## IV.    The Multiplier Act

64.     Until the Multiplier Act took effect in 2022, Illinois law governed the warranty arrangements between manufacturers and dealers by requiring manufacturers to pay "fair and adequate" compensation for warranty work, measured by market-based "reasonableness."

65.     Thus, over the decades in which the market-based labor rule was in place, VWGoA ordered its economic relationships with its dealers, including its warranty reimbursement policies, based on the expectations the rule created for VWGoA about its future warranty service costs. But the Multiplier Act scrambles these long settled and well-functioning commercial arrangements. Illinois Dealers now contend that the statute entitles them to a 50 percent increase in compensation for warranty labor, while the Recoupment Bar ensures that the entire cost of this windfall is borne by VWGoA and others.

### A.    The Multiplier Provision

66.     The long-standing warranty labor reimbursement rule was upended when, in 2021, the Illinois General Assembly enacted the Multiplier Act, HB3940, Public Act 102-0232.

16

67.    As of January 1, 2022, the Multiplier Act eliminated the long-standing market-based "reasonableness" measure for determining the adequacy and fairness of compensation for warranty service, replacing it with a legislatively determined multiplier. Specifically, the Multiplier Act requires that every manufacturer that uses a "time guide" to designate Warranty Flat Rate Time must now multiply designated times for each and every repair operation by a factor of 1.5 when compensating dealers for warranty service (the "Multiplier"), thereby increasing warranty labor costs by 50 percent.

68.    The Multiplier Act accomplished this change by removing the reasonableness requirement for time allowances and adding the following language to Section 6(6) of the MVFA:

   i.    "Every manufacturer . . . shall properly fulfill any warranty agreement and adequately and fairly compensate each of its motor vehicle dealers for labor and parts."

   ii.   "Adequate and fair compensation requires the manufacturer to pay each dealer no less than the amount the retail customer pays for the same services with regard to rate and time."

   iii.  "Any time guide previously agreed to by the manufacturer and the dealer for extended warranty repairs may be used in lieu of actual time expended. In the event that a time guide has not been agreed to for warranty repairs, or said time guide does not define time for an applicable warranty repair, the manufacturer's time guide shall be used, multiplied by 1.5 . . . Time allowances for the diagnosis and performance of warranty work and service shall be no less than charged to retail customers for the same work to be performed."

815 ILCS § 710/6(a)–(b).

69.    Under this provision, when the Warranty Flat Rate Time to complete a repair operation is one hour, VWGoA must nonetheless compensate an Illinois Dealer

17

for 1.5 hours of time for that repair operation on a vehicle under warranty. This Multiplier applies regardless of how long the repair actually takes.

70.     The Multiplier Act compounds its impact by providing that time allowances for warranty service may not be less than charged to retail customers for the same repair. The Multiplier thus sets a reimbursement floor, while removing the "reasonableness" ceiling on technician time that the statute had previously imposed. In other words, the Multiplier Act requires manufacturers to pay their dealers whatever those dealers are able to charge their retail customers, regardless of the actual time required for the repairs and even if the retail charges are unreasonable.[3]

71.     In addition, the Multiplier Act rewards inefficient and poor service by prohibiting VWGoA from enforcing quality and performance standards for warranty service. Specifically, it prohibits any reduction in payments "due to preestablished market norms or market averages," and any "restrictions or limitations of customer repair frequency due to failure rate indexes or national failure averages." 815 ILCS § 710/6(b).

72.     For example, if an Illinois Volkswagen Dealer repeatedly takes twice as long to complete a repair operation as the average U.S. Volkswagen dealer takes, the Multiplier Act prohibits VWGoA from reducing any warranty reimbursement payments to the lagging Illinois Volkswagen Dealer. Similarly, if an Illinois Audi Dealer fails to successfully complete a warranty repair after three successive visits

---

[3] Section 710/6(g) previously allowed a manufacturer and a majority or more of its Illinois Dealers to expressly agree upon a uniform warranty reimbursement policy. The Multiplier Act deletes the exemption. *Compare* 815 ILCS § 710/6(g) (2021) *with* 815 ILCS § 710/6(g) (2022) (leaving such subsection blank).

by the same customer, when the national failure rate is less than one return visit, VWGoA cannot reduce any warranty reimbursement payments to the underperforming dealer.

### B. The Recoupment Bar

73.   In addition to requiring manufacturers to compensate dealers for warranty service for artificially inflated amounts of time, the Multiplier Act restricts manufacturers from recovering those increased costs. It states that "[m]anufacturers are not permitted to impose *any form* of cost recovery *fees or surcharges* against a franchised auto dealership for payments made in accordance with this Section" (the "Recoupment Bar").  815 ILCS § 710/6(b) (emphasis added).

74.   The Recoupment Bar imposes one of two potential prohibitions on cost recovery. It might prohibit VWGoA from recovering its increased costs due to the Multiplier Act—for example, by raising the wholesale prices of new Volkswagen and Audi vehicles sold in Illinois. Alternatively, it might allow VWGoA to adopt mechanisms to recoup the increased costs from dealers or consumers, but prohibit VWGoA from describing, classifying, or identifying such mechanisms as any form of "fee" or "surcharge."

### C. The Purpose of the Multiplier Act

75.   The Multiplier Act includes no statement of its purpose, and there is little legislative history addressing the intent or purpose of the Act. The limited legislative history that does exist indicates that some proponents of the Multiplier

Act sought the amendments purportedly to increase compensation for vehicle service technicians.

76.     When Governor Pritzker later signed the Multiplier Act, he announced in a press release that the purpose of the Act was to increase technicians' pay: "All work deserves fair compensation, and I'm proud that the Act I'm signing today ensures automobile mechanics are compensated fairly for the critical skilled labor they provide."[4]

77.     The Multiplier Act does not in fact "ensure" higher pay for technicians because the additional payments it extracts from manufacturers flow to dealers, not to their technician employees, and the Act does not compel or even incentivize dealers to increase employee compensation.

78.     Governor Pritzker's press release also featured quotes from legislators who supported the Act but appeared to fundamentally misunderstand its contents and effects. For example, State Senator Christopher Belt said: "Technicians are receiving unjust pay for their hard work and expertise from manufacturers who are taking full advantage of them[.] This is really a David and Goliath story. Technicians, especially in smaller shops, have little recourse if a major auto manufacturer decides to pay them poorly."

79.     Contrary to Senator Belt's claim, warranty service under manufacturer limited warranties is performed at large franchise dealerships, not "smaller shops." Some "smaller shops," such as franchise AAMCO and Midas repair shops, may service

---

[4] *See* "Gov. Pritzker Signs Legislation to Boost Pay for Middle Class Blue Collar Jobs," Jul. 30, 2021, online at https://www.illinois.gov/news/press-release.23648.html (visited Dec. 2, 2022).

their own warranties, but such shops are not covered by the legislation. Moreover, legacy manufacturers and distributors such as VWGoA neither employ nor pay such technicians—dealers do. But the Multiplier Act does not require dealers to increase compensation to their technicians. Nor does the Multiplier Act apply to the manufacturers, such as Tesla, that employ and pay their own technicians.

## VI. The Multiplier Act Is Unconstitutional

80.    The Multiplier Act is unconstitutional under several provisions of the United States and Illinois Constitutions.

81.    The Multiplier Act is not rationally related to any purported goal of increasing the compensation of motor vehicle repair technicians. VWGoA and other similarly situated manufacturers and distributors do not employ or set compensation for technicians in Illinois. Each of the Illinois Volkswagen Dealers and Illinois Audi Dealers do those things for their respective dealerships. The Multiplier Act, moreover, does not require the Illinois Dealers to increase pay to technicians for any of their work, whether it be warranty service, retail service, or otherwise.

82.    Indeed, the legislation requires nothing of the Illinois Dealers at all. The Multiplier Act requires only that VWGoA and similarly situated manufacturers and distributors increase by 50 percent the amounts they pay to their dealers to perform warranty service on their behalf.

83.    On information and belief, many Illinois Dealers have not substantially increased technician compensation as a result of the Multiplier Act.

84.    The Multiplier Act's transfer of assets from motor vehicle manufacturers and distributors, such as VWGoA, to Illinois auto dealers, such as the Illinois Dealers,

is impermissible unless it serves a legitimate public interest, a test the Multiplier Act fails. The Act transfers hundreds of millions of dollars from VWGoA and other manufacturers and distributors directly to Illinois dealers, without any mechanism to ensure that dealers' windfall gains are ultimately conveyed to the legislation's supposed intended beneficiaries—the technicians.

85.     Additionally, the Multiplier Act draws irrational distinctions between various participants in the market for providing warranty services. In doing so, it violates the Due Process and Equal Protection clauses of the United States and Illinois Constitutions, as well as the Special Legislation Clause of the Illinois Constitution.

86.     The Multiplier Act irrationally discriminates between different types of motor vehicle manufacturers. VWGoA provides warranties on Audi and Volkswagen vehicles that it distributes to independent franchise dealers, which in turn employ service technicians to perform warranty work. Tesla, Rivian, and Lucid provide warranties on vehicles they sell to consumers, but employ their own service technicians to perform warranty work. The legislation does not require the latter class of manufacturers—those who directly employ technicians (*e.g.,* Tesla, Rivian, and Lucid)—to assume greater warranty costs, nor does it incentivize or require them to increase pay to their technicians.

87.     The Multiplier Act does not require or incentivize franchisors of after-market repair shops that directly employ technicians—such as AAMCO, Jiffy Lube, Meineke, Christian Brothers and Midas—to increase technician pay.

22

88. There is no rational basis for the Multiplier Act's requirements and distinctions. Specifically, there is no rational basis to require VWGoA and similarly situated manufacturers to overcompensate motor vehicle dealers for warranty service.

89. Before the Multiplier Act, VWGoA already provided full compensation (if not more) to the Illinois Dealers for warranty service. On information and belief, even without the Multiplier, the Illinois Dealers realized substantial profits from warranty service. The legislature made no finding that warranty service is unprofitable for any franchise dealers, nor that manufacturer/distributor time allowances are unreasonable or inadequate

90. The Multiplier Act also unlawfully discriminates against interstate commerce, or at least unduly burdens it, in violation of the Commerce Clause of the United States Constitution.

91. First, the Multiplier Act has a discriminatory effect. By requiring VWGoA to subsidize the Illinois Dealers (by paying them for work that they are not doing), the Multiplier Act artificially reduces the Illinois Dealers' operating costs, making it more difficult for dealers in neighboring states to compete with the Illinois Dealers for customers. There is no demonstrably valid justification for such subsidies. The only plausible explanation for the subsidy is economic protectionism.

92. After the Multiplier Act became law, Illinois Dealers obtained a competitive advantage over Volkswagen and Audi dealers in other states, and especially over their rivals in neighboring states.

93.     Second, if the Recoupment Bar is construed broadly to prohibit VWGoA from recovering its increased costs for warranty service by any means, then the Multiplier Act unduly burdens interstate commerce by shifting its costs to consumers and dealers outside Illinois. To recover the arbitrary 50 percent increase in the cost of providing warranty service in Illinois, VWGoA would raise the wholesale prices of motor vehicles it sells outside Illinois. Those higher prices will be absorbed by the non-Illinois dealers purchasing cars from VWGoA, or their non-Illinois customers, or both. Regardless, the cost of purchasing a car in other states will rise compared to the cost of purchasing a car in Illinois, burdening interstate commerce generally. This burden on interstate commerce is excessive in relation to the purported benefits of the law, which overcompensates dealers by requiring manufacturers to pay for work not actually performed by the Illinois Dealers, while not necessarily increasing the compensation of the technicians they employ.

94.     Under that broad construction of the Recoupment Bar, the Multiplier Act also unlawfully confiscates VWGoA's property. The MVFA requires VWGoA to both perform its obligations under all existing warranties of Volkswagen and Audi brand vehicles in Illinois, and also pay the Illinois Dealers for warranty service as dictated in the Multiplier Act. If VWGoA is prohibited from recapturing the Multiplier's 50 percent increase in its cost for warranty service in Illinois, then the Multiplier Act—in its purpose and effect—redistributes VWGoA's property to the Illinois Dealers.

95.     Because the State of Illinois requires VWGoA to remain in the warranty-reimbursement marketplace while valid warranties remain outstanding, the Multiplier Act is not merely a price regulation that may disincentivize certain market activity. Rather, the Multiplier Act amounts to a per se taking of VWGoA's property, and transfers that property to a separate group of private persons (the Illinois Dealers), for no public purpose.

96.     In the alternative, the Multiplier Act accomplishes a regulatory taking because the Multiplier substantially interferes with VWGoA's contractual arrangements and the economic assumptions built into those arrangements.

97.     The Multiplier Act requires VWGoA to compensate the Illinois Dealers for warranty service at a higher rate than VWGoA bargained for, by arbitrarily increasing the compensation for warranty service by 50 percent. The Recoupment Bar then prohibits VWGoA from recovering this additional cost. It is impossible for VWGoA to avoid this cost because the MVFA forces VWGoA to compensate the Illinois Dealers for warranty service. In combination, these aspects of the Multiplier Act and MVFA impose on VWGoA a new financial obligation that undercuts a significant economic assumption of VWGoA's relationships with the Illinois Dealers.

98.     The economic impact of this interference in VWGoA's contractual arrangements is significant. The result is a 50 percent increase in VWGoA's warranty labor costs. In just 11 months, from January through November 2022, VWGoA has already paid the Illinois Dealers nearly *$10 million more* than it would have paid them *for the same work*, but for the Multiplier.

99. Even if there were a legitimate purpose for the taking, the State has still violated the Takings Clauses of the United States and Illinois Constitutions because it has not compensated VWGoA for the Multiplier Act's confiscation of its property.

100. If, on the other hand, the Recoupment Bar does not completely prohibit VWGoA's recovery of increased costs for warranty service in Illinois, but only prohibits VWGoA from recovering such costs by imposing identifiable "fees or surcharges," then the Multiplier Act unlawfully impinges on VWGoA's right to free speech by prohibiting it from communicating information to consumers about its pricing. Prohibiting cost recoupment only via fees or surcharges directed at those costs amounts to a prohibition on commercial speech to consumers that the cost of their vehicle has increased due to fees attributable to the Multiplier Act.

101. The only apparent purpose of prohibiting VWGoA from communicating fees or surcharges to recoup costs imposed by the Multiplier Act is to deprive consumers of information that the legislation had increased the cost of vehicles. The State has no substantial interest in barring consumer access to such information.

## CLAIMS

### COUNT I
### (Takings Clause of the U.S. Constitution)

102. Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

103. The Multiplier Act violates the Takings Clause of the United States Constitution, U.S. Const. amends. V and XIV, because it takes the property of VWGoA without just compensation.

104. The MVFA requires VWGoA to provide warranty services through the Illinois Dealers.

105. VWGoA has a property interest in the funds in its operating account used to pay the Illinois Dealers for warranty services and other operating costs.

106. The Multiplier Act requires VWGoA to compensate the Illinois Dealers for the warranty services it legally must provide at 1.5 times Warranty Flat Rate Time, whether or not the additional time is actually required to perform the warranty services.

107. The Multiplier Act forbids VWGoA from recouping the amounts paid for the excess time.

108. Because the Multiplier Act requires VWGoA to pay the Multiplier to the Illinois Dealers without requiring that the Illinois Dealers use the Multiplier payments to compensate technicians for work that is actually performed, and without allowing VWGoA to recoup those payments or even exit the market, the Multiplier Act takes VWGoA's property but not for a public purpose.

109. The requirements imposed by the Multiplier Act therefore constitute a *per se* taking of VWGoA's property.

110. Alternatively, the Multiplier Act constitutes a regulatory taking under the factors set forth in *Penn Central. Transp. Co. v. New York City,* 438 U.S. 104 (1978).

111. The economic impact of the Act's interference in VWGoA's contractual arrangements is significant. The result is a 50 percent increase in VWGoA's warranty

labor costs paid to the Illinois Dealers. In just 11 months, from January through November 2022, VWGoA has already paid the Illinois Dealers nearly *$10 million more* than it would have paid them *for the same work*, but for the Multiplier.

112.    The Multiplier Act also interferes with the economic assumptions built into VWGoA's relationships with the Illinois Dealers by requiring that compensation for warranty service be increased by 50 percent over what VWGoA assumed the compensation would be when it entered contracts and engaged in business dealings with the Illinois dealers.

113.    And the Multiplier Act transfers funds from VWGoA to the Illinois Dealers and deprives VWGoA the opportunity to either recoup those funds or exit the market, and is therefore akin to a physical invasion by the State.

114.    The State of Illinois has not paid VWGoA just compensation for the funds that it has paid to the Illinois Dealers under the Multiplier Act.

## COUNT II
### (Takings Clause of the Illinois Constitution)

115.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

116.    The Multiplier Act violates the Takings Clause of the Illinois Constitution, Ill. Const. 1970 art. I, § 15, because it takes the property of VWGoA without just compensation.

117.    The MVFA requires VWGoA to provide warranty services through the Illinois Dealers.

118.  VWGoA has a property interest in the funds in its operating account used to pay the Illinois Dealers for warranty services and other operating costs.

119.  The Multiplier Act requires VWGoA to compensate the Illinois Dealers for the warranty services it legally must provide at 1.5 times the amount of time required to provide those services, whether or not the additional time is actually required to perform the warranty services.

120.  The Multiplier Act forbids VWGoA from recouping the amounts paid for the excess time.

121.  Because the Multiplier Act requires VWGoA to pay the Multiplier to the Illinois Dealers without requiring that the Illinois Dealers use the Multiplier payments to compensate technicians for work that is actually performed, and without allowing VWGoA to recoup those payments or even exit the market, the Multiplier Act takes VWGoA's property but not for a public purpose.

122.  The requirements imposed by the Multiplier Act therefore constitute a *per se* taking of VWGoA's property.

123.  Alternatively, the Multiplier Act constitutes a regulatory taking under the factors set forth in *Penn Central. Transp. Co. v. New York City,* 438 U.S. 104 (1978).

124.  The economic impact of the Act's interference in VWGoA's contractual arrangements is significant. The result is a 50 percent increase in VWGoA's warranty labor costs paid to the Illinois Dealers. In just 11 months, from January through

November 2022, VWGoA has already paid the Illinois Dealers nearly *$10 million more* than it would have paid them *for the same work*, but for the Multiplier.

125. The Multiplier Act also interferes with the economic assumptions built into VWGoA's relationships with the Dealer Defendants by requiring that compensation for warranty service be increased by 50 percent over what VWGoA assumed the compensation would be when it entered contracts and engaged in business dealings with the Illinois dealers.

126. And the Multiplier Act transfers funds from VWGoA to the Illinois Dealers and deprives VWGoA the opportunity to either recoup those funds or exit the market, and is therefore akin to a physical invasion by the State.

127. The State of Illinois has not paid VWGoA just compensation for the funds that it has paid to the Illinois Dealers under the Multiplier Act.

## COUNT III
### (Commerce Clause of the U.S. Constitution)

128. Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

129. The Multiplier Act violates the Commerce Clause of the United States Constitution, U.S. Const. art I, § 8, cl. 3, because it has a discriminatory effect on interstate commerce. The Multiplier Act artificially reduces the Illinois Dealers' operating costs, making it more difficult for dealers in neighboring states to compete with the Illinois Dealers for customers. This discrimination is not justified by any valid factor unrelated to economic protectionism.

130.   Alternatively, even if the Multiplier Act does not discriminate against interstate commerce, it unduly burdens interstate commerce by shifting the entire cost of the Multiplier Act to consumers and dealers outside Illinois, via the Recoupment Bar.  This burden is disproportionate to any purported benefits of the Multiplier Act in Illinois, which are in fact illusory.

**COUNT IV**
**(First Amendment of the U.S. Constitution)**
**(In the Alternative to Counts I-III)**

131.   Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

132.   If the Recoupment Bar does not entirely prohibit VWGoA from recovering the costs imposed on it by the Multiplier Act, but rather prohibits VWGoA from recovering those costs through "fees and surcharges" identifiably attributable to such costs, then the Multiplier Act violates the First Amendment of the United States Constitution, U.S. Const. amend. I, because it restricts VWGoA's ability to communicate that the increased cost of vehicles is due to the Multiplier Act.

133.   If the Recoupment Bar prohibits VWGoA from charging a fee or surcharge directed at recovering the Multiplier payments, but does not prohibit VWGoA from indirectly recovering those payments by raising the wholesale prices of its vehicles, then it is prohibiting VWGoA from communicating to consumers that the price of its cars has increased due to the Multiplier Act.

134.   VWGoA's communications to consumers regarding the prices it charges for its vehicles, including any fees or surcharges that contribute to the total price, constitute lawful speech protected by the First Amendment.

135.   Prohibiting VWGoA from communicating that it has increased the price of a vehicle to recover the Multiplier cost imposed on it by the Multiplier Act deprives consumers of information about the impact of a regulation on the cost of a vehicle. The State of Illinois has no substantial interest in restricting that information.

136.   Prohibiting VWGoA from communicating that it is recouping the cost of the Multiplier by adding a fee or surcharge to the price of a vehicle does not advance the purported purpose of the Multiplier Act to increase compensation to technicians.

## COUNT V
### (Freedom of Speech Clause of the Illinois Constitution)
### (In the Alternative to Counts I-III)

137.   Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

138.   If the Recoupment Bar does not entirely prohibit VWGoA from recovering the costs imposed on it by the Multiplier Act, but rather just prohibits it from recovering those costs through "fees and surcharges" identifiably attributable to such costs, then the Multiplier Act violates the Freedom of Speech Clause of the Illinois Constitution, Ill. Const. 1970 art. I, § 4, because it restricts VWGoA's ability to communicate that the increased cost of vehicles is due to the Multiplier Act.

139.   If the Recoupment Bar prohibits VWGoA from charging a fee or surcharge directed at recovering the Multiplier payments, but does not prohibit VWGoA from indirectly recovering those payments by raising the wholesale prices of its vehicles, then it is prohibiting VWGoA from communicating to consumers that the price of its cars has increased due to the Multiplier Act.

140. VWGoA's communications to consumers regarding the prices it charges for its vehicles, including any fees or surcharges that contribute to the total price, are lawful speech protected by the Illinois Freedom of Speech Clause.

141. Prohibiting VWGoA from communicating that it has increased the price of a vehicle to recover the Multiplier cost imposed on it by the Multiplier Act deprives consumers of information about the impact of a regulation on the cost of a vehicle. The State of Illinois has no substantial interest in restricting that information.

142. Prohibiting VWGoA from communicating that it is recouping the cost of the Multiplier by adding a fee or surcharge to the price of a vehicle does not advance the purported purpose of the Multiplier Act to increase compensation to technicians.

## COUNT VI
### (Special Legislation Clause of the Illinois Constitution)

143. Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

144. The Multiplier Act violates the Special Legislation Clause of the Illinois Constitution, Ill. Const. 1970, art. IV § 13, because it is a special law that purports to benefit only automotive repair technicians employed by Illinois new motor vehicle dealers, when the law could be applied generally to all motor vehicle repair technicians.

145. Technicians who are employed by motor vehicle dealers are similarly situated to technicians who work directly for motor vehicle manufacturers or franchised or independent repair shops because they all do the same type of repair work.

33

146. By requiring manufacturers and distributors who sell vehicles through franchised dealers to compensate dealers for warranty service using the Multiplier, without imposing a comparable requirement on either non-franchised EV manufacturers (such as Tesla) or warranty service franchisors (such as Midas), Section 6 of the MVFA confers a special benefit on the latter two groups of warranty service providers.

147. The distinctions the MVFA draws between dealer-employed technicians and other motor vehicle technicians (and thus between warranty service providers that directly employ such technicians and those that do not) is arbitrary. There is no reasonable basis on which to exclude technicians who do not work for dealers from its benefits.

148. VWGoA, which is a distributor of EVs through a dealer network, has been injured by this arbitrary distinction because its competitors, EV manufacturers without dealer networks (such as Tesla, Lucid and Rivian), are not required to compensate technicians who provide warranty services based on the Multiplier.

## COUNT VII
### (Due Process Clause of the U.S. Constitution)

149. Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

150. The Multiplier Act violates the Due Process Clause of the United States Constitution, U.S. Const. amends. V and XIV, because it deprives VWGoA of property in an arbitrary manner that is not rationally related to a legitimate government interest.

151.    VWGoA has built certain economic assumptions into its relationships with the Illinois Dealers, including reimbursement at Warranty Flat Rate Times that accurately reflect the amount of time required for a dealer to complete a warranty service repair. The Warranty Flat Rate Times determine the compensation that VWGoA must pay the Illinois Dealers for such warranty service repairs. VWGoA has a property interest in the funds it holds in its operating accounts to pay such compensation.

152.    By requiring VWGoA to pay the Illinois Dealers 1.5 times the Warranty Flat Rate Time for warranty service repairs, effectively requiring VWGoA to pay for the time not worked, the Multiplier Act arbitrarily transfers a significant amount of VWGoA's property to the Illinois Dealers.

153.    Significantly increasing the expense incurred by VWGoA by requiring that it pay the Illinois Dealers 50 percent more than the Warranty Flat Rate Time is not a legitimate state purpose.

154.    The purported purpose of the Multiplier Act is to provide adequate compensation to technicians. Neither the Recoupment Bar nor the Multiplier is rationally related to that goal. The Multiplier Act does not require that the Illinois Dealers increase technicians' compensation by 50 percent (or any amount at all), and the Recoupment Bar does nothing to increase the compensation of technicians.

155.    The Multiplier Act is not rationally related to a legitimate state interest and therefore deprives VWGoA of its property interest in its contractual relationships with the Illinois Dealers without due process of law.

## COUNT VIII
### (Due Process Clause of the Illinois Constitution)

156.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

157.    The Multiplier Act violates the Due Process Clause of the Illinois Constitution, Ill. Const. 1970, art. I § 2, because it is not rationally related to a legitimate government interest.

158.    VWGoA has built certain economic assumptions into its relationships with the Illinois Dealers, including reimbursement at Warranty Flat Rate Time that accurately estimate the amount of time required for a dealer to complete a warranty service repair. The Warranty Flat Rate Times determine the compensation that VWGoA must pay the Illinois Dealers for such warranty service repairs. VWGoA has a property interest in the funds it holds in its operating accounts to pay such compensation.

159.    By requiring VWGoA to pay the Illinois Dealers 1.5 times the Warranty Flat Rate Time for warranty service repairs, the Multiplier Act arbitrarily transfers a significant amount of VWGoA's property to the Illinois Dealers.

160.    Significantly increasing the expense incurred by VWGoA by requiring that it pay the Illinois Dealers 50 percent more than the Warranty Flat Rate Time is not a legitimate state purpose.

161.    The purported purpose of the Multiplier Act is to provide adequate compensation to technicians. Neither the Recoupment Bar nor the Multiplier is rationally related to that goal. The Multiplier Act does not require that the Illinois

Dealers increase technicians' compensation by 50 percent (or any amount at all), and the Recoupment Bar does nothing to increase the compensation of technicians.

162.    The Multiplier Act is not rationally related to a legitimate state interest and therefore deprives VWGoA of its property interest in its contractual relationships with the Illinois Dealers without due process of law.

## COUNT IX
### (Equal Protection Clause of the U.S. Constitution)

163.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

164.    The Multiplier Act violates the Equal Protection Clause of the United States Constitution, U.S. Const. amend XIV, by treating EV manufacturers with dealer networks (such as VWGoA) differently from EV manufacturers without dealer networks (such as Tesla, Lucid, or Rivian), and denying equal protection of the laws to all EV manufacturers regardless of their dealer model.

165.    EV manufacturers and distributors are similarly situated with regard to warranty service, whether or not they use dealer networks to distribute and sell their vehicles or not because they are all in the business of selling EVs.

166.    By requiring EV manufacturers and distributors with dealer networks to compensate dealers for warranty service using the Multiplier, Section 6 of the MVFA confers a special benefit on EV manufacturers and distributors without dealer networks that are not required to use the Multiplier.

167.    The distinction that the MVFA draws between EV manufacturers and distributors with dealer networks and those without dealer networks is arbitrary. It is not rationally related to a legitimate government interest.

## COUNT X
### (Equal Protection Clause of the Illinois Constitution)

168.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 101 herein.

169.    The Multiplier Act violates the Equal Protection Clause of the Illinois Constitution, Ill. Const. 1970, art. I § 2, by treating EV manufacturers with dealer networks (such as VWGoA) differently from EV manufacturers without dealer networks (such as Tesla, Lucid, or Rivian), and denying equal protection of the laws to all EV manufacturers regardless of their dealer model.

170.    EV manufacturers and distributors are similarly situated with regard to warranty service, whether or not they use dealer networks to distribute and sell their vehicles or not because they are all in the business of selling EVs.

171.    By requiring EV manufacturers and distributors with dealer networks to compensate dealers for warranty service using the Multiplier, Section 6 of the MVFA confers a special benefit on EV manufacturers and distributors without dealer networks that are not required to use the Multiplier.

172.    The distinction that MVFA draws between EV manufacturers and distributors with dealer networks and those without dealer networks is arbitrary. It is not rationally related to a legitimate government interest.

WHEREFORE, Plaintiff Volkswagen Group of America, Inc. prays that this Court enter an order:

A.      Declaring that the Multiplier Act violates the Takings Clause of the United States Constitution as applied to VWGoA's obligations to compensate the Illinois Dealers for warranty service and is therefore void as to those obligations;

B.      Declaring that the Multiplier Act violates the Takings Clause of the Illinois Constitution as applied to VWGoA's obligations to compensate the Illinois Dealers for warranty service and is therefore void as to those obligations;

C.      Declaring that the Multiplier Act violates the Commerce Clause of the United States Constitution and is therefore void on its face;

D.      Declaring that if the Multiplier Act does not entirely prohibit VWGoA from recouping its Multiplier payments, but only prohibits it from recovering those costs through fees and surcharges, then it violates the First Amendment of the United States Constitution and is therefore void on its face;

E.      Declaring that if the Multiplier Act does not entirely prohibit VWGoA from recouping its Multiplier payments, but only prohibits it from recovering those costs through fees and surcharges, then it violates the Freedom of Speech Clause of the Illinois Constitution and is therefore void on its face;

F.      Declaring that the Multiplier Act violates the Special Legislation Clause of the Illinois Constitution and is therefore void on its face;

G.      Declaring that the Multiplier Act violates the Due Process Clause of the United States Constitution and is therefore void on its face and as applied;

H.      Declaring that the Multiplier Act violates the Due Process Clause of the Illinois Constitution and is therefore void on its face and as applied;

I.      Declaring that the Multiplier Act violates the Equal Protection Clause of the United States Constitution and is therefore void on its face;

J.      Declaring that the Multiplier Act violates the Equal Protection Clause of the Illinois Constitution and is therefore void on its face;

K.      Enjoining the Defendants from enforcing the Multiplier Act against VWGoA;

L.      Awarding VWGoA its attorneys' fees and costs under 42 U.S.C. § 1988; and

M.      Providing any other relief that this Court determines would be just.

Dated: December 14, 2022                  VOLKSWAGEN GROUP OF AMERICA, INC.

                                          By:   /s/ Owen H. Smith
                                                Owen H. Smith
                                                Matthew A. Bills
                                                Edward F. Malone
                                                Jack O. Snyder, Jr.
                                                BARACK FERRAZZANO
                                                KIRSCHBAUM & NAGELBERG LLP
                                                200 W. Madison Street, Suite 3900
                                                Chicago, IL 60606
                                                312.984.3100 (P)
                                                312.984.3150 (F)
                                                owen.smith@bfkn.com

                                                Carolyn Shapiro
                                                SCHNAPPER-CASTERAS PLLC
                                                200 E. Randolph Street, Suite 5100
                                                Chicago, IL 60601
                                                (312) 906-5392
                                                cshapiro@schnappercasteras.com