# EXHIBIT A

HB3940 Enrolled         LRB102 17040 JLS 22467 b

1      AN ACT concerning business.

2  **Be it enacted by the People of the State of Illinois,**
3  **represented in the General Assembly:**

4      Section 5. The Motor Vehicle Franchise Act is amended by
5  changing Sections 1.1 and 6 as follows:

6      (815 ILCS 710/1.1) (from Ch. 121 1/2, par. 751.1)
7      Sec. 1.1. Declaration of purpose. The Legislature finds
8  and declares that the distribution and sale of vehicles within
9  this State vitally affects the general economy of the State
10 and the public interest, welfare, and safety and that in order
11 to promote the public interest, welfare, and safety, and in
12 the exercise of its police power, it is necessary to regulate
13 motor vehicle manufacturers, distributors, wholesalers and
14 factory or distributor branches or representatives, and to
15 regulate dealers of motor vehicles doing business in this
16 State in order to prevent frauds, impositions, discrimination,
17 and other abuses upon its citizens, to protect and preserve
18 the investments and properties of the citizens of this State,
19 to foster healthy competition, and to provide adequate and
20 sufficient service to consumers generally. The licensing and
21 supervision of motor vehicle dealers is necessary for the
22 protection of consumers and the sale of motor vehicles by
23 unlicensed dealers <u>shall</u> ~~should~~ be <u>prohibited</u> ~~prevented~~.

HB3940 Enrolled - 2 - LRB102 17040 JLS 22467 b

1    The Legislature further finds that the regulation of motor
2  vehicle manufacturers, distributors, wholesalers, factory
3  branches, distributor branches and representatives, and
4  dealers promotes the distribution of motor vehicles to the
5  public and provides a system for servicing vehicles and for
6  complying with manufacturer warranties so that consumers can
7  keep their motor vehicles properly functioning and safe. The
8  sale and distribution of motor vehicles constitutes a
9  continuing obligation of manufacturers, distributors,
10  wholesalers, factory branches, distributor branches and
11  representatives, and dealers to consumers, and the public has
12  an interest in promoting the availability of post-sale
13  mechanical and operational services.
14  (Source: P.A. 100-308, eff. 8-24-17.)

15    (815 ILCS 710/6) (from Ch. 121 1/2, par. 756)
16    Sec. 6. Warranty agreements; claims; approval; payment;
17  written disapproval.
18    (a) Every manufacturer, distributor, wholesaler,
19  distributor branch or division, factory branch or division, or
20  wholesale branch or division shall properly fulfill any
21  warranty agreement and adequately and fairly compensate each
22  of its motor vehicle dealers for labor and parts.
23    (b) <u>Adequate and fair compensation requires the</u>
24  <u>manufacturer to pay each dealer no less than the amount the</u>
25  <u>retail customer pays for the same services with regard to rate</u>

1 and time.
2 Any time guide previously agreed to by the manufacturer
3 and the dealer for extended warranty repairs may be used in
4 lieu of actual time expended. In the event that a time guide
5 has not been agreed to for warranty repairs, or said time guide
6 does not define time for an applicable warranty repair, the
7 manufacturer's time guide shall be used, multiplied by 1.5.
8 In no event shall such compensation fail to include full
9 ~~reasonable~~ compensation for diagnostic work, as well as repair
10 service, labor, and parts. Time allowances for the diagnosis
11 and performance of warranty work and service shall be no less
12 than charged to retail customers ~~reasonable and adequate~~ for
13 the same work to be performed.
14 No warranty or factory compensated repairs shall be
15 excluded from this requirement, including recalls or other
16 voluntary stop-sell repairs required by the manufacturer. If a
17 manufacturer is required to issue a recall, the dealer will be
18 compensated for labor time as above stated.
19 Furthermore, manufacturers shall pay the dealer the same
20 effective labor rate (using the 100 sequential repair orders
21 chosen and submitted by the dealer less simple maintenance
22 repair orders) that the dealer receives for customer-pay
23 repairs. This requirement includes vehicle diagnostic times
24 for all warranty repairs. Additionally, if a technician is
25 required to communicate with a Technical Assistance
26 Center/Engineering/or some external manufacturer source in

HB3940 Enrolled - 4 - LRB102 17040 JLS 22467 b

1  order to provide a warranty repair, the manufacturer shall pay
2  for the time from start of communications (including hold
3  time) until the communication is complete.
4      The dealer may submit a request to the manufacturer for
5  warranty labor rate increases a maximum of once per calendar
6  year.
7      A claim made by a franchised motor vehicle dealer for
8  compensation under this Section shall be either approved or
9  disapproved within 30 days after the claim is submitted to the
10  manufacturer in the manner and on the forms the manufacturer
11  reasonably prescribes. An approved claim shall be paid within
12  30 days after its approval. If a claim is not specifically
13  disapproved in writing or by electronic transmission within 30
14  days after the date on which the manufacturer receives it, the
15  claim shall be considered to be approved and payment shall
16  follow within 30 days.
17      In the determination of what constitutes reasonable
18  compensation under this Section, the principal factor to be
19  given consideration shall be the prevailing wage rates being
20  paid by the dealer in the relevant market area in which the
21  motor vehicle dealer is doing business, and in no event shall
22  such compensation to of a motor vehicle dealer for labor times
23  and labor rates warranty service be less than the rates
24  charged by such dealer for like service to retail customers
25  for nonwarranty service and repairs. Additionally, the
26  manufacturer The franchiser shall reimburse the dealer

1  ~~franchisee~~ for any parts provided in satisfaction of a
2  warranty at the prevailing retail price charged by that dealer
3  for the same parts when <u>sold to a retail customer</u> ~~not provided~~
4  ~~in satisfaction of a warranty; provided that such motor~~
5  ~~vehicle franchisee's prevailing retail price is not~~
6  ~~unreasonable when compared with that of the holders of motor~~
7  ~~vehicle franchises from the same motor vehicle franchiser for~~
8  ~~identical merchandise in the geographic area in which the~~
9  ~~motor vehicle franchisee is engaged in business~~.
10     <u>There shall be no reduction in payments due to</u>
11  <u>preestablished market norms or market averages. Manufacturers</u>
12  <u>are prohibited from establishing restrictions or limitations</u>
13  <u>of customer repair frequency due to failure rate indexes or</u>
14  <u>national failure averages.</u>
15     <u>No debit reduction or charge back of any item on a warranty</u>
16  <u>repair order may be made absent a finding of fraud or illegal</u>
17  <u>actions by the dealer.</u>
18     <u>A warranty claim timely made shall not be deemed invalid</u>
19  <u>solely because unavailable parts cause additional use and</u>
20  <u>mileage on the vehicle.</u>
21     <u>If a manufacturer imposes a recall or stop sale on any new</u>
22  <u>vehicle in a dealer's inventory that prevents the sale of the</u>
23  <u>vehicle, the manufacturer shall compensate the dealer for any</u>
24  <u>interest and storage until the vehicle is repaired and made</u>
25  <u>ready for sale.</u>
26     <u>Manufacturers are not permitted to impose any form of cost</u>

HB3940 Enrolled - 6 - LRB102 17040 JLS 22467 b

1 <u>recovery fees or surcharges against a franchised auto</u>
2 <u>dealership for payments made in accordance with this Section.</u>
3 All claims, either original or resubmitted, made by motor
4 vehicle dealers hereunder and under Section 5 for such labor
5 and parts shall be either approved or disapproved within 30
6 days following their submission. All approved claims shall be
7 paid within 30 days following their approval. The motor
8 vehicle dealer who submits a claim which is disapproved shall
9 be notified in writing of the disapproval within the same
10 period, and each such notice shall state the specific grounds
11 upon which the disapproval is based. The motor vehicle dealer
12 shall be permitted to correct and resubmit such disapproved
13 claims within 30 days of receipt of disapproval. Any claims
14 not specifically disapproved in writing within 30 days from
15 their submission shall be deemed approved and payment shall
16 follow within 30 days. The manufacturer or franchiser shall
17 have the right to require reasonable documentation for claims
18 and to audit such claims within a one year period from the date
19 the claim was paid or credit issued by the manufacturer or
20 franchiser, and to charge back any false or unsubstantiated
21 claims. The audit and charge back provisions of this Section
22 also apply to all other incentive and reimbursement programs
23 for a period of one year after the date the claim was paid or
24 credit issued by the manufacturer or franchiser. However, the
25 manufacturer retains the right to charge back any fraudulent
26 claim if the manufacturer establishes in a court of competent

HB3940 Enrolled - 7 - LRB102 17040 JLS 22467 b

jurisdiction in this State that the claim is fraudulent.

(c) The motor vehicle franchiser shall not, by agreement, by restrictions upon reimbursement, or otherwise, restrict the nature and extent of services to be rendered or parts to be provided so that such restriction prevents the motor vehicle franchisee from satisfying the warranty by rendering services in a good and workmanlike manner and providing parts which are required in accordance with generally accepted standards. Any such restriction shall constitute a prohibited practice.

(d) For the purposes of this Section, the "prevailing retail price charged by that dealer for the same parts" means the price paid by the motor vehicle franchisee for parts, including all shipping and other charges, multiplied by the sum of 1.0 and the franchisee's average percentage markup over the price paid by the motor vehicle franchisee for parts purchased by the motor vehicle franchisee from the motor vehicle franchiser and sold at retail. The motor vehicle franchisee may establish average percentage markup under this Section by submitting to the motor vehicle franchiser 100 sequential customer paid service repair orders or 90 days of customer paid service repair orders, whichever is less, covering repairs made no more than 180 days before the submission, and declaring what the average percentage markup is. The average percentage markup so declared shall go into effect 30 days following the declaration, subject to audit of the submitted repair orders by the motor vehicle franchiser

HB3940 Enrolled - 8 - LRB102 17040 JLS 22467 b

1 and adjustment of the average percentage markup based on that
2 audit. Any audit must be conducted within 30 days following
3 the declaration. Only retail sales not involving warranty
4 repairs, parts covered by subsection (e) of this Section, or
5 parts supplied for routine vehicle maintenance, shall be
6 considered in calculating average percentage markup. No motor
7 vehicle franchiser shall require a motor vehicle franchisee to
8 establish average percentage markup by a methodology, or by
9 requiring information, that is unduly burdensome or time
10 consuming to provide, including, but not limited to, part by
11 part or transaction by transaction calculations. A motor
12 vehicle franchisee shall not request a change in the average
13 percentage markup more than twice in one calendar year.
14     (e) If a motor vehicle franchiser supplies a part or parts
15 for use in a repair rendered under a warranty other than by
16 sale of that part or parts to the motor vehicle franchisee, the
17 motor vehicle franchisee shall be entitled to compensation
18 equivalent to the motor vehicle franchisee's average
19 percentage markup on the part or parts, as if the part or parts
20 had been sold to the motor vehicle franchisee by the motor
21 vehicle franchiser. The requirements of this subsection (e)
22 shall ~~not~~ apply to entire engine assemblies and entire
23 transmission assemblies. ~~In the case of those assemblies, the~~
24 ~~motor vehicle franchiser shall reimburse the motor vehicle~~
25 ~~franchisee in the amount of 30% of what the motor vehicle~~
26 ~~franchisee would have paid the motor vehicle franchiser for~~

1　　the assembly if the assembly had not been supplied by the
2　　franchiser other than by the sale of that assembly to the motor
3　　vehicle franchisee.

4　　　　(f) The obligations imposed on motor vehicle franchisers
5　　by this Section shall apply to any parent, subsidiary,
6　　affiliate, or agent of the motor vehicle franchiser, any
7　　person under common ownership or control, any employee of the
8　　motor vehicle franchiser, and any person holding 1% or more of
9　　the shares of any class of securities or other ownership
10　　interest in the motor vehicle franchiser, if a warranty or
11　　service or repair plan is issued by that person instead of or
12　　in addition to one issued by the motor vehicle franchiser.

13　　　　(g) (Blank). (1) Any motor vehicle franchiser and at least
14　　a majority of its Illinois franchisees of the same line make
15　　may agree in an express written contract citing this Section
16　　upon a uniform warranty reimbursement policy used by
17　　contracting franchisees to perform warranty repairs. The
18　　policy shall only involve either reimbursement for parts used
19　　in warranty repairs or the use of a Uniform Time Standards
20　　Manual, or both. Reimbursement for parts under the agreement
21　　shall be used instead of the franchisees' "prevailing retail
22　　price charged by that dealer for the same parts" as defined in
23　　this Section to calculate compensation due from the franchiser
24　　for parts used in warranty repairs. This Section does not
25　　authorize a franchiser and its Illinois franchisees to
26　　establish a uniform hourly labor reimbursement.

1     ~~Each franchiser shall only have one such agreement with~~
2     ~~each line make. Any such agreement shall:~~
3         ~~(A) Establish a uniform parts reimbursement rate. The~~
4     ~~uniform parts reimbursement rate shall be greater than the~~
5     ~~franchiser's nationally established parts reimbursement~~
6     ~~rate in effect at the time the first such agreement~~
7     ~~becomes effective; however, any subsequent agreement shall~~
8     ~~result in a uniform reimbursement rate that is greater or~~
9     ~~equal to the rate set forth in the immediately prior~~
10    ~~agreement.~~
11        ~~(B) Apply to all warranty repair orders written during~~
12    ~~the period that the agreement is effective.~~
13        ~~(C) Be available, during the period it is effective,~~
14    ~~to any motor vehicle franchisee of the same line make at~~
15    ~~any time and on the same terms.~~
16        ~~(D) Be for a term not to exceed 3 years so long as any~~
17    ~~party to the agreement may terminate the agreement upon~~
18    ~~the annual anniversary of the agreement and with 30 days'~~
19    ~~prior written notice; however, the agreement shall remain~~
20    ~~in effect for the term of the agreement regardless of the~~
21    ~~number of dealers of the same line make that may terminate~~
22    ~~the agreement.~~
23        ~~(2) A franchiser that enters into an agreement with its~~
24    ~~franchisees pursuant to paragraph (1) of this subsection (g)~~
25    ~~may seek to recover its costs from only those franchisees that~~
26    ~~are receiving their "prevailing retail price charged by that~~

HB3940 Enrolled - 11 - LRB102 17040 JLS 22467 b

1 ~~dealer" under subsections (a) through (f) of this Section,~~
2 ~~subject to the following requirements:~~
3 ~~(A) "costs" means the difference between the uniform~~
4 ~~reimbursement rate set forth in an agreement entered into~~
5 ~~pursuant to paragraph (1) of this subsection (g) and the~~
6 ~~"prevailing retail price charged by that dealer" received~~
7 ~~by those franchisees of the same line make. "Costs" do not~~
8 ~~include the following: legal fees or expenses;~~
9 ~~administrative expenses; a profit mark-up; or any other~~
10 ~~item;~~
11 ~~(B) the costs shall be recovered only by increasing~~
12 ~~the invoice price on new vehicles received by those~~
13 ~~franchisees; and~~
14 ~~(C) price increases imposed for the purpose of~~
15 ~~recovering costs imposed by this Section may vary from~~
16 ~~time to time and from model to model, but shall apply~~
17 ~~uniformly to all franchisees of the same line make in the~~
18 ~~State of Illinois that have requested reimbursement for~~
19 ~~warranty repairs at their "prevailing retail price charged~~
20 ~~by that dealer", except that a franchiser may make an~~
21 ~~exception for vehicles that are titled in the name of a~~
22 ~~consumer in another state.~~
23 ~~(3) If a franchiser contracts with its Illinois dealers~~
24 ~~pursuant to paragraph (1) of this subsection (g), the~~
25 ~~franchiser shall certify under oath to the Motor Vehicle~~
26 ~~Review Board that a majority of the franchisees of that line~~

HB3940 Enrolled - 12 - LRB102 17040 JLS 22467 b

1  ~~make did agree to such an agreement and file a sample copy of~~
2  ~~the agreement. On an annual basis, each franchiser shall~~
3  ~~certify under oath to the Motor Vehicle Review Board that the~~
4  ~~reimbursement costs it recovers under paragraph (2) of this~~
5  ~~subsection (g) do not exceed the amounts authorized by~~
6  ~~paragraph (2) of this subsection (g). The franchiser shall~~
7  ~~maintain for a period of 3 years a file that contains the~~
8  ~~information upon which its certification is based.~~
9  ~~(3.1) A franchiser subject to subdivision (g)(2) of this~~
10 ~~Section, upon request of a dealer subject to that subdivision,~~
11 ~~shall disclose to the dealer, in writing or in person if~~
12 ~~requested by the dealer, the method by which the franchiser~~
13 ~~calculated the amount of the costs to be reimbursed by the~~
14 ~~dealer. The franchiser shall also provide aggregate data~~
15 ~~showing (i) the total costs the franchiser incurred and (ii)~~
16 ~~the total number of new vehicles invoiced to each dealer that~~
17 ~~received the "prevailing retail price charged by that dealer"~~
18 ~~during the relevant period of time. In responding to a~~
19 ~~dealer's request under this subdivision (g)(3.1), a franchiser~~
20 ~~may not disclose any confidential or competitive information~~
21 ~~regarding any other dealer. Any dealer who receives~~
22 ~~information from a franchiser under this subdivision (g)(3.1)~~
23 ~~may not disclose that information to any third party unless~~
24 ~~the disclosure occurs in the course of a lawful proceeding~~
25 ~~before, or upon the order of, the Motor Vehicle Review Board or~~
26 ~~a court of competent jurisdiction.~~

HB3940 Enrolled - 13 - LRB102 17040 JLS 22467 b

1  ~~(4) If a franchiser and its franchisees do not enter into~~
2  ~~an agreement pursuant to paragraph (1) of this subsection (g),~~
3  ~~and for any matter that is not the subject of an agreement,~~
4  ~~this subsection (g) shall have no effect whatsoever.~~
5  ~~(5) For purposes of this subsection (g), a Uniform Time~~
6  ~~Standard Manual is a document created by a franchiser that~~
7  ~~establishes the time allowances for the diagnosis and~~
8  ~~performance of warranty work and service. The allowances shall~~
9  ~~be reasonable and adequate for the work and service to be~~
10 ~~performed. Each franchiser shall have a reasonable and fair~~
11 ~~process that allows a franchisee to request a modification or~~
12 ~~adjustment of a standard or standards included in such a~~
13 ~~manual.~~
14 ~~(6) A franchiser may not take any adverse action against a~~
15 ~~franchisee for not having executed an agreement contemplated~~
16 ~~by this subsection (g) or for receiving the "prevailing retail~~
17 ~~price charged by that dealer". Nothing in this subsection~~
18 ~~shall be construed to prevent a franchiser from making a~~
19 ~~determination of a franchisee's "prevailing retail price~~
20 ~~charged by that dealer", as provided by this Section.~~
21 (Source: P.A. 96-11, eff. 5-22-09.)